IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORI FLOOD,                          :

    Plaintiff,                   :

v.                                   :
                        Civil Action No. GLR-12-2100
UNIVERSITY OF MARYLAND               :
MEDICAL SYSTEM CORPORATION,
                                 :

    Defendant.                   :
                                 :

## MEMORANDUM OPINION

Pending before the Court is Defendant's, University of Maryland Medical System Corporation ("UMMS"), Motion for Summary Judgment (ECF No. 80), three Motions to Seal the parties' summary judgment briefs (ECF Nos. 81, 86, 90), and Plaintiff's, Lori Flood, Motion for Leave to File Surreply (ECF No. 93). The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons set forth below, UMMS's Motion for Summary Judgment will be granted in part and denied in part, the Motions to Seal will be granted, and Flood's Motion for Leave to File Surreply will be denied.

### I. Background

Flood was hired by UMMS in December 2008 as a clinical pharmacist. Clinical pharmacists' job duties included verifying doctors' orders, dispensing medications, providing information to medical staff regarding drug interactions, and overseeing the work of pharmacy technicians. Pharmacists are also responsible for

monitoring the electronic "queue" of medications ordered for the patients served by their pharmacy. A pharmacist is required to verify each prescription before it is filled by a pharmacy technician and medication cannot leave a pharmacy unless a pharmacist physically verifies that a prescription is properly filled. Thus, a pharmacist is required to be physically present in the pharmacy at all times. UMMS contains multiple pharmacies: the main or "central" pharmacy, and approximately four "satellite" pharmacies within the same building, including the pediatric pharmacy.

Within the first six months of Flood's employment, UMMS received numerous complaints regarding her failure to adhere to policies and procedures. Due to her performance issues, Flood's initial six-month probationary period was extended for three months. Moreover, following the completion of her probationary period, Flood continued to have ongoing performance issues, for which she received numerous formal disciplinary actions.

Flood suffers from a degenerative disk disease in her neck and lower back. At the time she reported to work on the night of November 23, 2010, she was experiencing some back pain, but was capable of performing her work duties. That night, she was the sole pharmacist assigned to work in UMMS's pediatric pharmacy, which provides clinical pharmacy services to the newborn intensive care unit, the pediatric intensive care unit, and the pediatric unit. As her back pain increased, however, Flood attempted to

contact her direct supervisor, Robyn Warnick, to seek permission to return home to retrieve her medication.

As a supervisor, Warnick rotated between the UMMS pharmacies. Flood tried texting, calling, and paging Warnick, but did not try to email her, even though they frequently communicated that way. Nevertheless, without successfully reaching Warnick, Flood abandoned the pediatric pharmacy and left the hospital building without permission. Flood asked Amjad Ahmed, the pharmacist who was staffing the central pharmacy that night, to monitor the medication "queue" while she was away.

After Flood returned to the hospital, Warnick observed that Flood appeared confused and found her speech to be slurred. Based on these observations, Warnick referred Flood for a fitness for duty evaluation,[1] which was conducted by the Employee Health Department ("EH"). Flood was placed on an administrative leave of absence with pay pending the results of the evaluation.

On January 10, 2011, while out on fitness for duty, Flood submitted the required medical certification to complete her request for a leave of absence under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) (2012).[2] UMMS contends that,

---

[1] The purpose of a fitness for duty evaluation is to determine whether an employee may have a medical issue, including a drug or alcohol problem or an addiction to prescribed medication, that could prevent the employee from performing his or her job duties safely.

[2] Flood asserts that her request for FMLA leave was approved on January 10, 2011, however, the record reflects that Flood merely submitted Medical Certification documenting her eligibility for

upon being notified Flood had been cleared by EH for fitness for duty, two days later, on January 12, 2011, however, it proceeded to terminate Flood for her conduct on November 23, 2010.

Following her termination, Flood initiated this lawsuit in the Circuit Court for Baltimore City, Maryland. (ECF No. 2). The case was removed to this Court on July 13, 2012. (ECF No. 1). On October 15, 2012, Flood filed her Second Amended Complaint, alleging Gender Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-16 et seq. (2012) (Count I), Hostile Work Environment under Title VII (Count II), Retaliation under Title VII (Count III), Retaliation under FMLA (Count IV), Interference with Rights Under FMLA (Count V), Gender Discrimination under Title 20 of the State Government Article of the Annotated Code of Maryland ("Title 20"), Md.Code Ann., State Gov't §§ 20-601, et seq. (Count VI), Disability Discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. (2012) (Count VII), Disability Discrimination (Disparate Treatment) under Title 20 (Count VIII), Disability Discrimination (Failure to Accommodate) under the ADA (Count IX), Disability Discrimination (Failure to Accommodate) under Title 20 (Count X), Disability Discrimination (Disparate Treatment) under the Rehabilitation Act, 29 U.S.C. § 794(a) (2012)

---

FMLA-protected leave on January 10, 2011. (Pl.'s Opp'n Mot. Summ. J. Ex. O ["Medical Certification"], ECF No. 85-17). There is no evidence in the record to reflect when, and if, her request for protected-leave was ever approved.

(Count XI), Hostile Work Environment under Title 20 (Count XII), and Retaliation under Title 20 (Count XIII) (See Second Am. Compl., ECF No. 30). On July 21, 2014, UMMS filed its Motion for Summary Judgment (ECF No. 80), simultaneously with a Motion to Seal Motion for Summary Judgment and Exhibits (ECF No. 81). Flood filed a timely Opposition to Motion for Summary Judgment ("Opposition") (ECF No. 85), simultaneously with a Motion to Seal the Opposition and Exhibits (ECF No. 86). UMMS filed a timely Reply to Opposition to Motion for Summary Judgment ("Reply") (ECF No. 89), simultaneously with a Motion to Seal the Reply (ECF No. 90). Additionally, on October 16, 2014, Flood filed a Motion for Leave to File Surreply. (ECF No. 93). The Motions are ripe for disposition.

## II. Discussion

### A. Motions to Seal

The parties seek authorization to file their summary judgment briefs under seal because they contain highly confidential information regarding third-party medical information that has been marked as confidential pursuant to the terms of the parties' Confidentiality Stipulation and Qualified Protective Order ["Protective Order"]. The terms of the parties' Protective Order require material marked confidential and/or highly confidential filed with the Court be filed under seal pursuant to Local Rule 105.11. (See Confidentiality Stipulation and Qualified Protective Order, ECF No. 38).

5

Local Rule 105.11 provides: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections." Local Rule 105.11 (D.Md. 2014). The court must address the public's right to access materials made part of a dispositive motion when considering a summary judgment motion despite the existence of a pretrial discovery protective order. Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). Thus, compliance with Local Rule 105.11 allows the Court to engage in the mandatory analysis outlined by the United States Court of Appeals for the Fourth Circuit. See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 179-80 (4th Cir. 1988) ("[T]his court established a set of procedures which must be followed when a district court seals judicial records or documents.").

Under this mandatory analysis, the Court should (1) determine the source of the public right of access to the documents to be sealed; (2) give the public notice of a request to seal and a reasonable opportunity to challenge it and consider less drastic alternatives to sealing; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. See id. at 181.

The Court finds that the public holds a First Amendment interest in the parties' summary judgment briefs. See Rushford,

6

846 F.2d at 253 ("[A] more rigorous First Amendment standard should apply . . . to documents filed in connection with a summary judgment motion in a civil case."). Under the First Amendment, sealing a record "must be necessitated by a compelling government interest and narrowly tailored to serve that interest." Id. (citing Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984)). Here, the parties' briefs refer to and attach documents which contain individual medical information classified as confidential pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The need to protect confidential medical information proscribed by HIPAA serves an important governmental interest and there are no less restrictive means to serve that governmental interest. Moreover, the Court finds that the public notice and challenge requirement has been satisfied because the Motions to Seal have been pending for a minimum of eighty-eight days. Accordingly, the parties' uncontested Motions to Seal the summary judgment briefs will be granted. This memorandum, however, will not be sealed because it does not reference the confidential medical information at issue.

**B.    Motion for Leave to File a Surreply**

Flood seeks leave to file a surreply in support of her opposition to UMMS's Motion for Summary Judgment. "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2014).

"Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." <u>Khoury v. Meserve</u>, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing <u>Lewis v. Rumsfeld</u>, 154 F.Supp.2d 56, 61 (D.D.C. 2001)).

Attached to Flood's Opposition were numerous exhibits.  UMMS filed a Reply to Flood's Opposition challenging the admissibility of certain exhibits and asking the Court to exclude from consideration those exhibits.   Flood now contends that UMMS's Reply contained new evidentiary arguments she should be permitted to contest.   The Fourth Circuit has recently held, in nearly identical circumstances, however, that evidentiary challenges to defects presented in the opposing party's opposition do not raise a new legal theory, but instead constitute a direct response to the party's own argument and evidence.   See <u>F.D.I.C. v. Cashion</u>, 720 F.3d 169, 176 (4th Cir. 2013).

Here, Flood merely failed to anticipate how UMMS would respond to her exhibits.   See <u>id.</u> ("That [the Defendant] failed to anticipate how the [Plaintiff] would respond to his reliance on the [evidence presented] does not automatically entitle him to file a surreply.").   Flood has made no argument or showing that the information contained in her surreply regarding the aforementioned evidentiary challenges was not available to her at the time she originally responded to UMMS's Motion for Summary Judgment. For

these reasons, the Court concludes that Flood's proposed surreply is unwarranted.

**C.     Motion to Strike**

In its Reply, UMMS argues because exhibits A, C, and E through X are not accompanied by any authenticating affidavit or declaration, they must be excluded from the Court's consideration of the Motion for Summary Judgment.  The Court disagrees.

Prior to 2010, Fed.R.Civ.P. 56(c)(2) prohibited the Court's consideration of unauthenticated documents on a motion for summary judgment.  See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (citing Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550-51 (9th Cir. 1990)).  "Under Fed.R.Civ.P. 56, as amended in 2010, [however,] facts in support of or opposition to a motion for summary judgment need not be in admissible form; the requirement is that the party identify facts that could be put in admissible form."  Wonasue v. Univ. of Md. Alumni Ass'n, No. PWG-11-3657, 2013 WL 5719004, at *8 (D.Md. Oct. 17, 2013) (alteration in original).  Thus, UMMS has not raised a proper objection to Flood's exhibits.

Moreover, Fed.R.Evid. 901(b)(4) permits the authentication of evidence through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed.R.Evid. 901(b)(4). After a review of the documents, the Court finds that the internal consistency, distinctive characteristics (including UMMS Letterhead

and bates-stamp numbers), and substance and specificity of the content are adequate bases for authentication. Accordingly, the exhibits will be considered as being what they purport to be.

Further, UMMS argues Flood cannot rely on her Answers to Interrogatories ("Answers") in support of her Opposition, because the Answers are not based on personal knowledge, and she has not shown that the Answers fall under any hearsay exception. Flood neither "state[d] the information [in her Answers] in an affidavit that complies with Rule 56 [nor] execute[d] the [Answers] on personal knowledge." Boyer-Liberto v. Fontainebleau Corp., 752 F.3d 350, 355 (4th Cir. 2014), reh'g en banc granted (July 1, 2014). Accordingly, Flood's Answers will be excluded from consideration as part of the summary judgment record.

D.   **Motion for Summary Judgment**

1.   **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute

10

exists.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case.   Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).   Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

2.   **Analysis**

At the outset, the Court notes that in her Opposition, Flood voluntarily withdrew her Hostile Work Environment claims (Counts II & XII), Retaliation claims under Title VII and Title 20 (Counts III & XIII), Interference with FMLA claim (Count V), and Failure to Accommodate claims (Counts IX & X).   (Pl.'s Opp'n Mot. Summ. J. 2 n.1, ECF No. 85).   Thus, the only remaining claims in this case are the Gender and Disability Disparate Treatment claims (Counts I, VI-VIII, and XI) and the FMLA Retaliation claim (Count IV).

a. **Gender and Disability Discrimination (Disparate Treatment)**

UMMS argues Flood cannot establish a prima facie case of disparate treatment because she fails to demonstrate that other employees violated work rules of comparable seriousness. The Court agrees.

To establish a prima facie case of disparate treatment in the discriminatory discipline context, a plaintiff must show (1) membership in a protected class, (2) prohibited conduct similar in nature to that of a person outside the protected class, and (3) more severe disciplinary measures than those enforced against comparable employees outside the protected class. Sook Yoon v. Sebelius, 481 F.App'x 848, 850 (4th Cir. 2012) (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)). When assessing the comparable seriousness of misconduct, "precise equivalence in culpability between employees is not the ultimate question," Moore v. City of Charlotte, NC, 754 F.2d 1100, 1107 (4th Cir. 1985); instead the Court should consider "the harm caused or threatened to the victim or society, and the culpability of the offender" id. at 1107 (quoting Solem v. Helm, 463 U.S. 277, 292 (1983)) (internal quotation marks omitted).

Flood acknowledges the act of leaving the hospital building without Warnick's permission violated UMMS policy. She argues, however, a number of similarly-situated male and non-disabled employees engaged in conduct which similarly violated UMMS's

policies and warranted termination, but received more lenient disciplinary treatment. While any comparison "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," Cook, 988 F.2d at 511, "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008).

Here, UMMS identifies a material distinction between Flood's violation from those of her purported comparators: she placed her patients in danger by leaving the hospital building without permission, making her unavailable to respond to potential emergencies. While Flood maintains that purported comparators also left the hospital building mid-shift without first obtaining their supervisor's permission, there is no evidence in the record to support this contention.[3] Further, Flood attempts to downplay the severity of her abandonment of the pediatric pharmacy by disputing whether a pharmacist had to be physically present in the pharmacy to dispense medication. "[I]t is not [the Court's] province[,

---

[3] Flood cannot create a dispute of material fact by making conclusory, self-serving arguments in opposition to a motion for summary judgment. See Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000) ("[S]elf-serving affidavit[s are] not enough to defeat [Defendant's] motion for summary judgment."); see also Mercer v. Arc of Prince Georges Cnty., Inc., 532 F. App'x 392, 397 (4th Cir. 2013) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)) (explaining that the object of Rule 56 is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit).

however,] to decide whether the reason [for the adverse employment action] was wise, fair, or even correct . . . ." Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 722 (4th Cir. 2002) (first alteration original) (internal quotation marks omitted); see also Harris v. Warrick Cnty. Sheriff's Dep't, 666 F.3d 444, 449 (7th Cir. 2012) ("We have repeatedly said we do not sit as a super-personnel department to determine which employment infractions deserve greater punishment."). Additionally, the Fourth Circuit has long emphasized that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996)); see also Holland v. Wash. Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007).

Moreover, UMMS identifies five formal disciplinary actions in the six months leading up to the night of the incident for which Flood was terminated. There is no evidence that any of the male pharmacists had any history of misconduct or had received previous reprimands, as had Flood. See Sebelius, 481 F. App'x at 850 (citing Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)); see also Aramburu, 112 F.3d at 1404 ("A court should also compare the relevant employment circumstances, such as work history . . . applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated); see also Moore, 754 F.2d at 1106 (discussing the defendant's burden of

establishing a permissible rationale for its decision to discipline two individuals differently).   Thus, assuming Flood was able to successfully identify comparators, evidence of her prior reprimands underscores first, whether those employees were similarly situated and, second, the discretionary factors leading to UMMS's decision to terminate her employment.

Thus, the misconduct that led to Flood's termination in question is sufficiently distinct to render the proposed comparators not similarly situated.[4]   Consequently, she has failed to establish a prima facie case of disparate treatment. Accordingly, Counts I, VI through VIII, and XI will be dismissed.[5]

---

[4] Even if Flood could successfully identify similarly situated comparators, under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), once a plaintiff establishes a prima facie case of discriminatory discipline, the burden shifts to the employer to demonstrate "a permissible rationale for treating the compared employees differently."   Moore, 754 F.2d at 1106; see also Sebelius, 481 F.App'x at 850 ("[T]he burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the difference in disciplinary action." (citing Cook, 988 F.2d at 511)).   Here, UMMS has satisfied its burden of proffering evidence of a legitimate rationale for treating the compared employees differently—placing patients in danger by abandoning the pharmacy.   There is no evidence in the record to demonstrate that this distinction is merely pretext for discrimination.

[5] See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose-the prohibition of illegal discrimination in employment-courts have routinely used Title VII precedent in ADA cases."); see also Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) ("[W]hether suit is filed . . . under the Rehabilitation Act or . . . under the ADA, the substantive standards for determining liability are the same."); see also Moore v. Sprint Commc'n Co., No. RDB-11-00290, 2012 WL 4480696, at *6 (D.Md. Sept. 27, 2012) ("Maryland courts routinely look to Title

### b.   **FMLA Retaliation**

Next, Flood argues UMMS retaliated against her for requesting protected FMLA leave.  FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and are analyzed under the burden-shifting framework of McDonnell Douglas Corp. See Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

Thus, to succeed on her retaliation claim, Flood must first make a prima facie showing "that [she] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to [her] protected activity."  Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998).  If she "puts forth sufficient evidence to establish a prima facie case of retaliation" and UMMS "offers a non-discriminatory explanation" for her termination, Flood "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Nichols, 251 F.3d at 502.

It is undisputed that Flood engaged in a protected activity (requesting FMLA leave) and that she experienced an adverse employment action (termination).  Thus, the critical issue to be determined is whether Flood can demonstrate a causal connection between her requesting FMLA leave and her termination. Flood offers

---

VII cases to determine a defendant's scope of liability under this Title 20 of the Maryland Code.").

evidence of the close temporal proximity between her request for a FMLA protected leave and her termination to show a causal connection. While evidence as to temporal proximity "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Here, after Flood submitted her Medical Certification documenting her eligibility for FMLA protected leave on January 10, 2011, (see Medical Certification), she was terminated two days later, on January 12, 2011. Thus, Flood has made a prima facie showing of retaliation.

Similarly, UMMS has satisfied its burden of proffering evidence of a legitimate, non-discriminatory reason for terminating Flood: abandonment of the pharmacy without her supervisor's permission. To show that UMMS's proffered reason for the adverse employment action is pretextual, Flood "must produce affirmative evidence of discriminatory motive or affirmative evidence that [UMMS's] proffered explanation is simply unworthy of credence." Blankenship v. Buchanan Gen. Hosp., 140 F.Supp.2d 668, 674 (W.D. Va. 2001). Flood argues, if UMMS truly believed her conduct breached a pharmaceutical standard of care which placed patients in danger and warranted termination from employment, it is reasonable to infer that it would have immediately terminated her. Nevertheless, UMMS waited seven weeks to terminate Flood's

employment, just two days after she submitted her Medical Certification documenting her eligibility for FMLA protected leave.

UMMS counters that, in accordance with its own policy and procedures to rehabilitate employees found to be abusing drugs or alcohol, it waited to learn the results of Flood's fitness for duty evaluation before making a final decision to terminate Flood for her conduct on the night of November 23, 2010.  In support of this argument, UMMS contends it terminated Flood as soon as it learned she was cleared for fitness for duty, on January 12, 2011.

A Duty Status Form dated January 10, 2011, however, indicates that Flood was neither fit for duty on January 10, 2011, nor scheduled for reevaluation until February 14, 2011.  (See Pl.'s Opp'n Mot. Summ. J. Ex. P, ECF No. 85-18).  Despite the January 10, 2011 Duty Status Form, UMMS contends, without pointing to any evidence in the record, that EH notified management that Flood was cleared for duty two days later on January 12, 2010, the date she was terminated.  Viewing the facts in a light most favorable to Flood, there is a genuine dispute of material fact as to whether Flood was terminated upon a finding by UMMS EH that she was fit for duty or upon the submission of her Medical Certification establishing her eligibility for FMLA protected leave.

Given UMMS's position concerning the severity of Flood's violation, the seven-week gap between the violation and her termination, the temporal proximity between establishing her eligibility for FMLA protected leave and her termination, and the

inconsistencies in UMMS's account of when Flood was cleared for duty, the Court concludes there is sufficient evidence for a jury to find pretext. Accordingly, UMMS's Motion for Summary Judgment will be denied with respect to Flood's FMLA retaliation claim (Count IV).

### III. Conclusion

For the reasons given above, UMMS's Motion for Summary Judgment (ECF No. 80) is GRANTED in part and DENIED in part; the parties' Motions to Seal (ECF Nos. 81, 86, 90) are GRANTED; and Flood's Motion for Leave to File Surreply (ECF No. 93) is DENIED. A separate Order will follow

Entered this 23rd day of December, 2014

/s/

_____
George L. Russell, III
United States District Judge